**Opinion filed April 14, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00056-CV

_____

## IN THE INTEREST OF T.C., T.B. JR., T.B., AND T.B., CHILDREN

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM 48,977**

### MEMORANDUM OPINION

This is an appeal from an order terminating the parental rights of the parents of T.B. Jr. and the youngest T.B.[1] Both parents have filed an appeal. We affirm.

*Issues*

The mother presents two issues for review, and the father presents three. In her first issue, she challenges the legal and factual sufficiency of the evidence supporting termination. In her second issue, the mother contends that the trial court abused its discretion in finding that she had waived trial by jury. The father first contends that the trial court abused its discretion in denying his request for a 180-day extension. In his second and third issues, he challenges the

---

[1]T.B. Jr. and the youngest T.B. are referred to in this opinion as "the children." The parental rights to T.C. and the middle T.B. were not terminated. These two children were placed with relatives, and the parents do not assert any error on appeal with respect to them.

legal and factual sufficiency of the evidence to support the finding that termination was in the best interest of the children.

*Legal and Factual Sufficiency*

With respect to the legal and factual sufficiency challenges, termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2010). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25-26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A-T) and that termination is in the best interest of the child. Section 161.001. In this case, the parents' rights were terminated upon findings that (1) each parent engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children and (2) each parent failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children who had been in the managing conservatorship of the Department for at least nine months as a result of the children's removal from the parent under Chapter 262[2] for the abuse or neglect of the children. *See* Section 161.001(1)(E), (O).

A. *Compliance with Court's Order: Section 161.001(1)(O).*

The record shows that the Department unsuccessfully attempted to provide family based safety services beginning in July 2008 and that the children were removed from their home in January 2009. The Department filed a petition for termination of the parents' rights on January 22, 2009. After a hearing, the court appointed the Department as the children's temporary managing conservator and ordered both parents to comply with each provision of the court order, which set out the actions necessary for the parents to avoid the restriction or

---

[2]TEX. FAM. CODE ANN. ch. 262 (Vernon 2008 & Supp. 2010) outlines the procedures for a suit brought by a governmental entity to protect the health and safety of a child.

termination of their parental rights. At the time of trial in January 2010, the children had been in the managing conservatorship of the Department for nearly one year.

The testimony at trial showed that neither parent had complied with the provisions of the trial court's order. The father does not take issue with the finding that he failed to comply. The mother argues on appeal that she did comply with the requirements of the family service plan; however, the record shows otherwise. She did not successfully complete the court-ordered counseling services or otherwise comply with the family service plan. The mother admitted at trial that she had not submitted to a psychological evaluation, completed parenting classes, completed individual counseling, or followed MHMR's recommendations regarding daily medication for depression as ordered by the trial court. Thus, there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother failed to comply with the provisions of the trial court's earlier order establishing the actions necessary for the mother to obtain the return of her children. The evidence is both legally and factually sufficient to support the trial court's finding under Section 161.001(1)(O).

*B. Conduct Endangering Children: Section 161.001(1)(E).*

To support termination under Section 161.001(1)(E), the offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use and domestic violence may constitute evidence of endangerment. *Id.*; *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). Subjecting children to a life of uncertainty and instability may also endanger their physical and emotional well-being. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

In this case, the mother initially denied being abused by the father, but eventually admitted being beaten by the father to the point that she thought she was going to die. The mother told her counselor that domestic violence had occurred throughout her relationship with the father, including when they had possession of the children. The mother testified that the children had actually seen one or two of the assaults and had heard some of the other fights from another room and that the police had been called to their residence more than fifteen times due to the domestic violence. The counselor classified the domestic violence situation as severe, but the mother did not agree; she failed to recognize the risk to the children caused by such domestic violence. The police reports, which were admitted into evidence, show a history of domestic

violence and abuse. Both parents abused illegal drugs, including crack cocaine and marihuana. The father also had an alcohol problem and had sold drugs from his home when the children were at home.

The housing provided by the parents was unsanitary, unsafe, and unstable. They were moving from place to place, including from motel room to motel room. On one visit, a caseworker observed that part of the window in the children's upstairs bedroom was missing; that the children could have easily fallen out; that the bathtub was full of very dirty, stale water; that the toilet was clogged up and would not flush; that the kitchen ceiling was about to cave in from a water leak upstairs; that there was mold under the kitchen sink and dirty dishes piled up; and that minimal food was in the home. The caseworker testified that the parents "kept running out of food" despite the caseworker's efforts to help, the father's income of over $3,000 a month, and $690 per month in food stamps. The mother testified that her children "always stayed fed until we ran out of groceries and stuff" but that her children did not go hungry or starve.

There was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. The evidence is both legally and factually sufficient to support the trial court's finding under Section 161.001(1)(E).

*C. Best Interest.*

With respect to the best interest of the children, no unique set of factors need be proved. *C.J.O.*, 325 S.W.3d at 266. But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also

constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The evidence that the parents endangered the children's well-being also supports the best interest finding. Additionally, there was evidence that both parents lacked the ability to be effective parents and that the children's visits with them were chaotic. The mother testified that her three youngest children want to come home with her but that T.C. does not because of the domestic violence. Testimony from the children's guardian ad litem and from the Department's supervisor in this case indicated that it would be in the best interest of the children for the parental rights of both parents to be terminated. The testimony showed that the youngest T.B. initially had some behavior problems. He had been placed with relatives who could not handle his behavior, and he was returned to foster care. His behavior has improved in foster care, and his foster parents would like to adopt him. The foster parents have provided the youngest T.B. with a safe and stable home, and the case supervisor believed the proposed adoption to be in the child's best interest. There was also testimony that T.B. Jr. needed to be in a stable environment as quickly as possible and that he needed a strong support system, which he has with his foster parents. The guardian ad litem testified that she had seen great improvement in T.B. Jr.'s respectfulness and demeanor since being placed with his foster family. T.B. Jr.'s current foster family will provide a home for him until he turns eighteen or finds a stable, adoptive home. The Department presented evidence that he had a chance of being adopted if the parents' rights were terminated.

Though the parents presented evidence that they had recently changed and were on the right path at the time of trial, the trial court was the factfinder and was the judge of the credibility of the witnesses. We cannot hold that the trial court's findings of best interest are not supported by clear and convincing evidence. The evidence is both legally and factually sufficient to support the trial court's findings that termination of each parent's parental rights is in the best interest of the children. The mother's first issue and the father's second and third issues are overruled.

*Motion for Extension*

Next, we will address whether the trial court abused its discretion in denying the father's request for a 180-day extension under TEX. FAM. CODE ANN. § 263.401 (Vernon 2008). Pursuant to Section 263.401, a trial court is required to dismiss a suit brought by the Department unless

trial has commenced by the first Monday after the first anniversary of the date that the Department was appointed temporary managing conservator or unless an extension has been granted under Section 263.401(b). A trial court may grant an extension of up to 180 days under that section.

In this case, the father sought an extension so that he could be afforded more time to comply with the requirements of the court-ordered family service plan. The Department's attorney and the ad litem objected to an extension because it would not be in the best interest of the children and because appellant had had more than ample time to complete the family service plan but had chosen not to work on it until sometime during the two-month period before the date of trial. We cannot hold that the trial court abused its discretion in denying the request for extension under these circumstances. The father's first issue is overruled.

### Waiver of Jury Trial

Finally, we must determine whether the trial court abused its discretion in determining that the mother waived her right to a jury trial. In its order, the trial court stated that a jury had been waived and that all questions of fact and law had been submitted to the trial court. The mother admits that neither she nor the Department ever requested a jury trial. Furthermore, the case was tried to the court without objection. The mother argues, however, that she was entitled to a jury trial and could not waive her right to a jury trial absent her express "assent." Her argument is flawed. A parent in a termination suit need not specifically assent to a jury waiver; waiver of a jury is implied if there has been no jury demand. *In re K.C.*, 23 S.W.3d 604, 608-09 (Tex. App.—Beaumont 2000, no pet.). The mother waived a jury by failing to request one as provided for by TEX. R. CIV. P. 216, the trial court's scheduling order, and TEX. FAM. CODE ANN. § 105.002 (Vernon 2008). The mother's second issue is overruled.

The order of the trial court is affirmed.


RICK STRANGE
JUSTICE

April 14, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

6